# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-31046

United States Court of Appeals
Fifth Circuit

**FILED**
January 10, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ANDRE HARRIS, also known as Pookie Harris; ARTHUR HARRIS, also known as Raymine Harris, also known as Black Harris,

Defendants–Appellants

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

Before SMITH, PRADO, and ELROD, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

In 2012, a jury convicted Defendants–Appellants Arthur Harris ("Arthur") and Andre Harris ("Andre") of (1) conspiracy to possess with intent to distribute crack cocaine; (2) conspiracy to possess firearms in furtherance of a drug-trafficking crime; (3) possession with intent to distribute crack cocaine; and (4) possession of firearms in furtherance of the drug-trafficking crimes listed above.[1] Arthur was also convicted of (1) possession of 5 grams or more of crack cocaine with intent to distribute and (2) possession of a firearm in

---

[1] Because both Defendants–Appellants share the same last name, we refer to Arthur Harris and Andre Harris by their first names.

No. 12-31046

furtherance of the drug-trafficking crime. Arthur was sentenced to 481 months' imprisonment, and Andre was sentenced to 181 months' imprisonment. On appeal, both allege a variety of errors were committed during their trial and at sentencing. For the reasons that follow, we affirm their convictions and sentences.

## I. BACKGROUND

### A. Factual Background

The charges and convictions in this case stem from three different incidents—one in September 2008, one in June 2010, and one in February 2011—and a series of recorded phone conversations between Andre and Arthur.

In September 2008, New Orleans police obtained consent to search a home owned by the parent of one of Arthur's friends, Casey Jones ("Jones"). Arthur was at the home at the time the police executed the search. Police focused their search on Jones's bedroom, and inside they found several different types of ammunition, a mirror covered in white powder residue, a razor blade, and plastic baggies. The police also recovered several firearms that were stored underneath the home. Arthur, Jones, and another friend of theirs, Walter Conley, were arrested that night.

Almost two years later, in June 2010, New Orleans police officers arrived at the home of Andre's and Arthur's mother to execute an arrest warrant for their sister on an unrelated battery charge. When police arrived, they saw contraband through a window and entered the house through the window. While the police were securing the house, they discovered several pieces of crack cocaine in a toilet. Police also confiscated "a wad of money" ($220) from Arthur's person. The only individuals in the home during this incident were

2

No. 12-31046

Arthur and his younger brother, TH.[2]  After police obtained a search warrant, they also found several firearms in the home.  Arthur was arrested and indicted on two charges that were later included in the 2011 superseding indictment, which led to the trial in this case.

While Arthur was in jail following the September 2008 and June 2010 incidents, he spoke on the phone many times with Andre.[3]  Those jailhouse phone calls were recorded, and agents used recordings of those calls in an attempt to gain insight into Andre's and Arthur's activity outside the jail.

Finally, in February 2011, New Orleans police officers and members of a U.S. Marshals task force went to Andre's apartment to arrest TH for armed carjacking.  When police arrived, they knocked on the front door and identified themselves.  They continued knocking after seeing one of the individuals in the house try to exit through a window.  The front door opened,[4] and when police entered, they found Andre, Arthur, and TH inside.  The police saw ammunition when they entered the apartment.  After obtaining a search warrant, they found several firearms, rounds of ammunition, a red sight (a small laser that helps aim a gun), $2,473 in cash, binoculars, ski masks, a scale, and sixty small plastic bags containing what was later identified as 11.2 grams of cocaine base. Arthur, Andre, and TH were all arrested.

---

[2] Because he was a minor at the time these events took place, we refer to the younger brother only by his initials.

[3] At trial, an Alcohol, Tobacco and Firearm agent, Agent Suzanne Pecora, testified that she had listened to "hundreds" of Arthur's phone calls and "[n]ot hundreds, but a lot" of Andre's phone calls.

[4] At trial, the officers testified that someone in Andre's apartment opened the door, but they could not recall who opened the door.

No. 12-31046

## B. Procedural Background

On February 24, 2011, Andre and Arthur were both indicted on four counts:

(1) conspiracy to possess with the intent to distribute an unspecified amount of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and § 846;

(2) conspiracy to possess firearms in furtherance of drug-trafficking crimes of (a) conspiracy to possess cocaine base with intent to distribute and (b) possession of cocaine base with intent to distribute in violation of 18 U.S.C. § 924(o);

(3) possession with intent to distribute an unspecified quantity of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; and

(4) possession of four firearms in furtherance of drug-trafficking crimes of (a) conspiracy to possess cocaine base with intent to distribute and (b) possession of cocaine base with intent to distribute in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2.

Arthur was also individually charged with possession with intent to distribute 5 grams or more of cocaine base and possession of two firearms in furtherance of a drug-trafficking crime, both dating back to his arrest in June 2010.

Following a three-day trial, a jury found Arthur and Andre guilty of all charges. After the preparation of a Presentence Investigation Report ("PSR") for both Andre and Arthur, the district court imposed sentences.

Arthur was sentenced to 481 months' imprisonment. In determining the quantity of drugs, the court, citing the comments to United States Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1, found that the amount seized did not reflect the scale of the offense and determined the quantity involved was greater than 28 grams, making his base level 26. The court also determined that Arthur was subject to a two-level enhancement under U.S.S.G. § 3B1.1 for being an organizer, leader, manager, or supervisor of his younger brother TH.

No. 12-31046

Because TH was a minor at the time, this also added another two-level enhancement under U.S.S.G. § 2D1.1(14)(B), leaving Arthur's base level at 30. Given his category III criminal history, his guidelines range was 121–151 months. Arthur was also subject to a thirty-year minimum sentence: not less than five years for possession of a firearm in furtherance of a drug-trafficking crime and not less than twenty-five years for a second conviction on that charge. After considering the 18 U.S.C. § 3553(a) factors, the court imposed a 481-month sentence on Arthur.

Andre was sentenced to 181 months. The court used the same drug quantity and the same enhancement for supervising TH, which left a base level of 30 and a range of 97–121 months based on his lack of criminal history. Andre was also subject to a minimum five-year sentence for his conviction for possession of a firearm in furtherance of a drug-trafficking crime. After considering the 3553(a) factors, the court imposed a 181-month sentence: the minimum 60 months and an additional 121 months based on the applicable range. Both Arthur and Andre timely appealed.

## II. JURISDICTION

This is an appeal of a final judgment and for review of a sentence, and so this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## III. DISCUSSION

Arthur and Andre allege that a variety of errors were committed during their trial and at sentencing. Arthur raises the following issues on appeal: (1) there was insufficient evidence to support his conviction for the conspiracy charges, the firearm possession charge, and the drug possession charge, all based on the February 2011 incident; (2) the district court erred in the jury instruction for the charge under 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug-trafficking crime; (3) the district court erred when it failed to instruct the jury that it could not consider Arthur's juvenile conduct

5

No. 12-31046

in determining guilt; (4) the district court miscalculated Arthur's guidelines range by improperly calculating the amount of crack cocaine and by enhancing his sentence for supervising his younger brother TH; (5) his 40-year sentence was substantively unreasonable; and (6) the district court erred in allowing Agent Pecora's extensive interpretation of the phone calls between Andre and Arthur.

Andre raises the following issues on appeal: (1) there was insufficient evidence to support his conviction for the conspiracy charges stemming from the February 2011 incident; (2) the evidence was insufficient to support his convictions for possession of drugs and firearms; (3) the district court erred in the jury instruction for the charge under 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug-trafficking crime; (4) his 181-month sentence was substantively unreasonable; (5) the district court erred in allowing Agent Pecora's extensive interpretation of the phone calls between Andre and Arthur; and (6) law enforcement officers violated his Fourth Amendment rights by entering his home without a search warrant. We address each of these concerns below.

## A. Sufficiency of the Evidence

### 1. Standard of Review

Both Arthur and Andre properly preserved this issue by moving for acquittal at the close of the Government's case and at the close of all of the evidence. *See United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007) (citation omitted). This Court reviews the sufficiency of the evidence de novo. *Id.* "In deciding whether the evidence was sufficient, we review all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id.* (citations omitted).

No. 12-31046

2. Analysis

*i. Sufficiency of the Evidence for the Conspiracy Charges*

Arthur and Andre argue that the evidence was insufficient to support their convictions for conspiracy to possess drugs and conspiracy to possess firearms in furtherance of the drug-trafficking crime.  Both argue that, during trial, the Government failed to prove that any agreement existed between the two of them to possess drugs or firearms.  In response, the Government points to testimony throughout the three-day jury trial, physical evidence police recovered, and recorded conversations that, it claims, allowed the jury to find the required elements satisfied beyond a reasonable doubt.

"[T]he elements of the conspiracy may be established by circumstantial evidence and may be inferred from the development and collocation of circumstances." *United States v. Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000) (citation and internal quotation marks omitted).  "An express, explicit agreement is not required; a tacit agreement will suffice." *United States v. Greenwood*, 974 F.2d 1449, 1457 (5th Cir. 1992) (citation omitted).  And, as this Court has previously recognized, "direct evidence of an agreement to deal in drugs rarely exists." *United States v. Ornelas–Rodriguez*, 12 F.3d 1339, 1345 (5th Cir. 1994).

We hold that the evidence was sufficient to support Arthur's and Andre's convictions for conspiracy.  First and foremost, police officers found Andre and Arthur together in Andre's apartment in February 2011, when the police recovered more than 11 grams of crack cocaine separated into 60 baggies, firearms, a scale, and more than $2,000 in cash.  In addition, the jury heard recordings and read transcripts of more than a dozen recorded phone calls between Arthur and Andre.  During those phone calls, Arthur and Andre repeatedly discussed drugs, firearms, and money earned from selling drugs and gave each other advice.

7

No. 12-31046

For example, in the phone calls immediately following the September 2008 incident, Andre told Arthur that "I told them ni--ers about leavin' all them guns in they houses" and "I used to tell them, what you gone put that     s--t in, what you got all that sh--t in the house for?  That sh--t don't supposed to be in no house."  Arthur and Andre also discussed how much to pay a woman named Bree: "I had to boost her up to seventy . . . she doin' good"/"I might just give her five, fifty"/"Man, I'd give that 'ho thirty-five man.  She, she gone make a bill easy"/"But she, I'm lookin' at the other point, I'm not out there, see what I'm sayin'."  Arthur also gave Andre advice, telling him "you better learn how to whip [i.e., convert powder cocaine into crack cocaine].  I ain't f--kin' with that s--t when I come home though, man."  In the same call, Arthur also told Andre that Andre "probably woulda been made about a hundred stacks [one stack is $1,000]" and telling him "if you plan before you do s--t, round, you'll be stacked out."  Viewing the evidence in the light most favorable to the verdict, we hold that a reasonable trier of fact could have found the evidence proved the conspiracy charges beyond a reasonable doubt.

> *ii. Sufficiency of the Evidence to Support Convictions for Possession of Drugs and Firearms Stemming from the February 2011 Incident*

Andre argues that, if we reverse the conspiracy convictions as he urges us to do, we should also vacate his possession convictions because those convictions relied on co-conspirator evidence that would not have been admissible without the conspiracy.  Arthur also claims that the evidence was insufficient to support his conviction for possession of crack cocaine with an intent to distribute and possession of a firearm based on the February 2011 incident.  He argues that no physical evidence linked him to the contraband and so he cannot be held responsible for the drugs and firearms that the police recovered from Andre's apartment.

8

No. 12-31046

We hold that the evidence was sufficient to support these convictions. Andre's only argument in favor of vacating his drug and firearms possession convictions rests on this Court reversing his conspiracy convictions. He claims that, because the conspiracy conviction should be reversed, statements of co-conspirators should not have been admitted, and thus, we should vacate his possession convictions. Because we affirm his conspiracy convictions and the evidence supports his possession convictions, we affirm his convictions for possession of drugs and firearms.

Arthur's arguments also do not convince us that the evidence was insufficient to support his convictions for possession. His arguments ignore the fact that the jury was not required to find that Arthur actually possessed the contraband. He could have been found to have constructive possession of the drugs and firearms; he also could have been held liable for Andre's substantive offenses during the conspiracy as a co-conspirator. *See Ornelas–Rodriguez*, 12 F.3d at 1345–46 (affirming the conviction of a co-conspirator for possession of cocaine even when "much of the government's evidence regarding the participation by [the defendant] may have been circumstantial"). Here, Arthur was found in Andre's apartment along with Andre and TH, and police officers also found drugs, firearms, ammunition, a scale, plastic baggies, and cash in Andre's apartment. Combined with the other evidence that supports the conspiracy conviction, such as the recorded phone calls discussed above, we hold that a reasonable trier of fact could have found beyond a reasonable doubt that Arthur possessed the contraband.

**B.   Jury Instruction for Charge for Possession of a Firearm in Furtherance of a Drug-Trafficking Crime under 18 U.S.C. § 924(c)**

1.   Standard of Review

The parties dispute the appropriate standard of review for this issue. Arthur argues that the Court should review the jury charge on the violation of

9

18 U.S.C. § 924(c)(1)(A) de novo.  He claims that he properly objected at trial, and he acknowledges that this Court typically reviews a failure to give a requested jury instruction for an abuse of discretion.  But, Arthur cites *United States v. Wright*, 634 F.3d 770 (5th Cir. 2011), for the proposition that "when a jury instruction hinges on a question of statutory construction, [this Court's] review is de novo."  *Id.* at 774.  While Andre acknowledges that his attorney did not object at trial, he cites *United States v. Sanchez–Sotelo*, 8 F.3d 202, 210 (5th Cir. 1993), to show that Arthur's objection preserves the error for him as well.  Andre also agrees with Arthur that the standard of review should be de novo.   The Government, however, responds that plain error review is appropriate because Arthur failed to adequately object and that "at best" his attorney's objection was "vague."

We agree with Arthur and Andre that we review the jury instruction de novo.  Arthur's attorney asked the district court for clarification of the jury instruction and requested that the court use his suggested language for the jury instruction instead, thereby preserving his argument for appeal.  *See United States v. Trice*, 823 F.2d 80, 91 n.11 (5th Cir. 1987) (holding that a similarly worded objection, although not "a model of clarity," was minimally sufficient to alert the court to the substance of the objection).  Further, the objection to the jury instruction hinges on a question of statutory interpretation.  Arthur and Andre claim the jury instruction was improper because it did not correctly encapsulate the statutory requirements for the crime of possession of a firearm in furtherance of a drug-trafficking crime under § 924(c).  Thus, we review the jury instructions for possession of a firearm in furtherance of a drug-trafficking crime de novo.

2. Analysis

Arthur argues that the § 924(c) jury instruction allowed the jury to convict him without finding the necessary elements of the § 924(c) offense.  He

claims that, under the given instruction, the jury could have found him guilty so long as it found that the firearms in question furthered the drug-trafficking offense, even if the jury did not believe that his *possession* of the firearms actually did so. Andre adopts this argument and further argues that the jury instruction removed the requirement of subjective intent that is inherent in the statute. The Government, pointing out that the district court followed this Court's pattern jury instructions for an alleged offense under §924(c), argues that the instructions required the Government to prove precisely what the statute requires.

We hold that the 18 U.S.C. § 924(c) jury instruction was correct. First, the Government is correct that the § 924(c) jury instruction given in this case mirrors the Fifth Circuit pattern jury instructions almost exactly.[5] Second, both the pattern jury instructions and the jury instructions in this case follow the language in § 924(c) and courts' interpretations of that language. *See* 18 U.S.C. § 924(c)(1)(A) ("any person who, . . . in furtherance of any [drug-trafficking crime], possesses a firearm"); *see also Dean v. United States*, 556 U.S. 568, 571–74 (2009) (interpreting § 924(c)(1)(A)); *United States v. Ceballos–*

---

[5] The jury instructions in this case were as follows:

> The second element is that the defendant knowingly possessed a firearm in furtherance of the defendant's alleged commission of the crimes as charged in Counts 1, 3 and/or 5.
>
> To prove that the defendant possessed a firearm in furtherance of the drug-trafficking offense, the government must prove that the defendant possessed a firearm that furthers, advances or helps forward the drug-trafficking crime.

The Fifth Circuit pattern jury instructions read:

> Second; That the defendant knowingly possessed a firearm in furtherance of the defendant's commission of the crime charged in Count ___.
>
> To prove the defendant possessed a firearm "in furtherance," the government must prove that the defendant possessed a firearm that furthers, advances, or helps forward the drug trafficking crime.

Fifth Circuit Pattern Jury Instructions (Criminal) § 2.48 (2012).

No. 12-31046

*Torres*, 218 F.3d 409, 415 (5th Cir. 2000) (interpreting the possession element of § 924(c) and holding that "firearm possession that furthers, advances, or helps forward the drug trafficking offense violates the statute"). Finally, this Court has previously upheld these pattern jury instructions as correctly stating the law. *See United States v. Montes*, 602 F.3d 381, 386–87 (5th Cir. 2010) (holding that the § 924(c)(1) instructions "correctly stated the law" where the defendant–appellant had challenged them as "convoluted" and "hard to understand").[6] Thus, we hold that the district court did not err in instructing the jury on the count of possession of a firearm in furtherance of a drug-trafficking crime charged under 18 U.S.C. § 924(c).

## C.  Failure to Instruct the Jury to Disregard the Offenses Arthur Committed as a Minor

### 1. Standard of Review

Both parties agree that Arthur did not raise this issue before the district court, and thus, we review only for plain error. Under plain error review, the Defendant–Appellant "must show: (1) an error, (2) that is plain, (3) and that affected his substantial rights." *United States v. Garcia–Gonzalez*, 714 F.3d 306, 315 (5th Cir. 2013) (citation omitted). Even if the Defendant–Appellant satisfies those criteria, this Court "will exercise discretion to correct the error only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (citation and internal quotation marks omitted).

---

[6] Specifically, Arthur and Andre argue that the instruction is currently ambiguous as to whether the firearm or the *possession* of that firearm must be "in furtherance" of the crime. We agree with the Government's interpretation and think that the instruction correctly states the law. Nonetheless, the pattern jury instruction may warrant future revision to provide greater grammatical clarity.

2. Analysis

Arthur argues that the district court erred by failing to instruct the jury that it could not consider the events that took place when he was under eighteen years old.  He points out that he was seventeen at the time of the September 2008 incident, and yet the jury was able to evaluate his conduct as a juvenile in conjunction with the other incidents that occurred when he was an adult (in June 2010 and February 2011) and the recorded phone calls.

"The circuits are split on whether the district court must instruct the jury to disregard evidence of pre-eighteen conduct when assessing guilt" in a continuing crime, such as a conspiracy.  *United States v. Tolliver*, 61 F.3d 1189, 1199–1200 (5th Cir. 1995), *vacated on other grounds sub nom. Moore v. United States*, 519 U.S. 802 (1996).  Although we acknowledged this circuit split in *Tolliver*, we left unanswered the question of whether the failure to give such a limiting instruction is error.  This Court reasoned that, because the "post-eighteenth birthday evidence was sufficient to support the jury's verdict," the defendant could not establish plain error.  *Id.* at 1200–01.  Arthur argues that his case is distinguishable from *Tolliver*, because, in his case, the post-eighteen conduct is insufficient to support the verdict.  But, as we have previously discussed, *see supra* Part III(A)(2), the jury saw a great deal of post-eighteen evidence on which it could have based Arthur's guilty verdict.  Thus, Arthur's case is not factually distinguishable from *Tolliver*.

We therefore hold that the district court's failure to give an instruction limiting the jury's reliance on Arthur's juvenile conduct was not plainly erroneous.  Under *Henderson v. United States*, 133 S. Ct. 1121 (2013), "a substantive legal question that was unsettled at the time the trial court acted . . . foreclose[s] the possibility that an error could have been 'plain'" unless it becomes settled by the time of appellate review.  *Id.* at 1124–25.  Here, the substantive legal question of whether the district court was required to

instruct the jury to disregard Arthur's pre-eighteen conduct was unanswered at the time of the trial. This Court still has not resolved this question, and given the sufficiency of the evidence of post-eighteen conduct, we need not answer it today. Thus, the district court did not plainly err in failing to give this instruction.

## D. Calculation of Arthur's Guidelines Range

### 1. Standard of Review

Under *Gall v. United States*, 552 U.S. 38 (2007), appellate courts take a two-step approach to reviewing sentences. *Id.* at 51. This Court must first review a sentence to ensure that it is procedurally sound and, assuming that it is, then consider the substantive reasonableness of the sentence under an abuse of discretion standard. *Id.* Nothing in this analysis under *Gall*, though, "alter[s] our review of the district court's construction of the Guidelines or findings of fact." *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Thus, we still review factual findings related to sentencing for clear error. *Id.* (citation omitted). Drug quantity determinations are factual determinations, *United States v. Ramirez*, 271 F.3d 611, 612 (5th Cir. 2001) (citation omitted), as is the determination of whether a defendant is a § 3B1.1 leader or organizer, *United States v. Valencia*, 44 F.3d 269, 272 (5th Cir. 1995). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [this Court] may not reverse," even if, had we been sitting as trier of fact, we might have weighed the evidence differently. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

No. 12-31046

2. Analysis

*i. Calculation of the Drug Quantity*

Arthur argues that he should only be held responsible for 15.7 grams of crack cocaine, the actual amount that police seized in the three incidents. The Government, though, claims that the district court did not clearly err in finding Arthur responsible for at least 28 grams of crack cocaine. For support, the Government points to the comments to U.S.S.G. § 2D1.1, which allow the district court to approximate the quantity of the controlled substance when the "amount seized does not reflect the scale of the offense." U.S.S.G. § 2D1.1 cmt. n.5. Thus, the Government argues, the district court did not err in relying on the amount of cash the police seized and the recorded phone calls to estimate that Arthur was responsible for at least 28 grams.

We agree that the district court's finding that Arthur was responsible for at least 28 grams of crack cocaine was not clearly erroneous. This Court has previously affirmed sentences where the district court, citing the comments to U.S.S.G. § 2D1.1, estimated the drug quantity when the amount actually seized did not reflect the scale of the offense, *see United States v. Robins*, 978 F.2d 881, 889–90 (5th Cir. 1992), and we see no error in the district court using the same approach in this case. During sentencing, the district court judge stated that given Arthur's and Andre's "extensive dealings" there was "sufficient evidence that their conspiracy and drug dealing greatly exceeded at least 28 grams." Our review of the record shows that the evidence supports this finding. The district court relied on (1) a phone call where Andre talked about having "a zone" (an ounce, or 28 grams of crack cocaine); (2) a phone call during which Arthur told Andre that if he kept going, he would "make a 100 stacks, meaning $100,000"; and (3) the $2,473 in cash that police found during the February 2011 incident. The record, viewed as a whole, makes the estimate of at least 28 grams plausible and not clearly erroneous.

15

No. 12-31046

### ii. Sentence Enhancement for Being a Leader of a Minor

Arthur also argues that the district court improperly found that he supervised his younger brother TH.  To argue that this factual finding is clearly erroneous, Arthur points to a recorded phone call where he asked TH to retrieve drugs and TH refused.  While he acknowledges that a police officer testified at trial that Arthur's mother had told the officer that Arthur made TH a drug mule, Arthur emphasizes that his mother testified at trial that she did not remember making that statement.

After reviewing the record, we hold that the district court's finding that Arthur supervised TH was not clearly erroneous.  In the recorded phone calls, Arthur stated that, during the June 2010 incident, he told TH to answer the door when police arrived; he discussed TH taking responsibility for the drugs found during the same incident; and he told his mother to ask TH to lie if the police questioned him about the June 2010 arrest.  Perhaps most importantly, at Arthur's trial, a police officer testified that Arthur's mother had told the officer that she threw Arthur out of her house and "had [Arthur] arrested before for fighting, bullying . . . [TH], for making him mule," which the officer understood to mean "to transport drugs."  And while Arthur is correct that his mother testified at trial that she did not remember making that statement, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson*, 470 U.S. at 574.  The district court had the opportunity to evaluate the credibility of both the police officer and Arthur's mother, and we must respect that determination.  *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988).  Taking all of these facts together, we hold that the district court's finding that Arthur supervised TH was not clearly erroneous.

16

No. 12-31046

**E. Substantive Reasonableness of Arthur's and Andre's Sentences**

1. Standard of Review

This Court reviews the substantive reasonableness of a sentence under an abuse of discretion standard. *See Gall*, 522 U.S. at 51. We apply a presumption of reasonableness if the sentence is within the guidelines range. *United States v. Gutierrez–Hernandez*, 581 F.3d 251, 254 (5th Cir. 2009) (citation omitted). "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) (citation omitted).

2. Substantive Reasonableness of the Sentences

*i. Substantive Reasonableness of Arthur's 481-Month Sentence*

Arthur argues that his sentence "was greater than necessary to accomplish the proper goals of imprisonment under § 3553(a)(2) and therefore was unlawful." Specifically, he mentions that he was a minor at the time of some of the offenses and that he "has struggled emotionally since childhood." He also claims that the district court "gave too much weight to the Guidelines in refusing [his] request for a downward variance." The Government disagrees, pointing out that the district court imposed a sentence that was at the bottom of the guidelines range.

We hold that Arthur's sentence is not substantively unreasonable. First, his sentence was within the guidelines: his guidelines range was 121–151 months, and he was sentenced to 121 months' imprisonment to be served consecutively with the mandatory thirty-year sentence. Thus, a presumption of reasonableness attaches, *see Gutierrez–Hernandez*, 581 F.3d at 254, a presumption that Arthur has failed to rebut. The district court considered the § 3553(a) factors, and while recognizing that "[i]t's a very long sentence

obviously," the court also noted that Arthur is "a person that should not be returned to the streets any time soon because [he is] . . . a menace to [him]self and to society." There is no evidence that the district court gave undue weight to any factors, failed to consider factors that it should have, or made a clear error in balancing sentencing factors. Finally, as this Court has previously observed, "it will be rare for a reviewing court to say . . . a sentence [at the bottom of the guidelines range] is 'unreasonable,'" *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005), and we see no reason to do so in this case. *See also United States v. Alonzo*, 435 F.3d 551, 554–55 (5th Cir. 2006) (holding that defendant–appellant had "failed to demonstrate that his properly calculated Guidelines sentence, which was at the lowest end of the range, was unreasonable").

### ii. *Substantive Reasonableness of Andre's 181-Month Sentence*

Andre argues that his sentence is substantively unreasonable for two main reasons. First, he alleges that the district court did not give sufficient weight to his positive character traits despite his difficult upbringing. He points out that he had a legal job, and he cites to a recorded conversation between himself and Arthur that he claims demonstrates that he has a "strong sense of fairness." Second, he claims that the firearms he possessed were necessary for protection and that "there is a moral distinction between people who initiate violence to advance their own ends and people who are caught up in the ensuing maelstrom," as he was. The Government rejects the idea that Andre's sentence failed to account for factors that should be given significant weight and also rejects the idea that Andre's need for guns for personal protection because of his drug-trafficking activity supports a variance.

We hold that Andre's sentence is not substantively unreasonable. He was sentenced within the guidelines, *see supra* Part I(B), and so a presumption of reasonableness attaches to his sentence. *See Gutierrez–Hernandez,* 581 F.3d

at 254. Andre has failed to rebut this presumption. The district court considered the factors in § 3553(a) in imposing his sentence. While Andre claims the district court did not properly weigh his employment or consider that he needed the firearms for protection, he has not cited any authority to support his claim that those factors rebut the presumption of reasonableness, nor have we located any authority that would support that position. Given the fact that the district court gave a sentence within guidelines and considered relevant factors without giving undue weight to improper factors, we cannot say that the district court abused its discretion in sentencing Andre. *See United States v. Duarte,* 569 F.3d 528, 530 (5th Cir. 2009) (rejecting the argument that the sentence was substantively unreasonable where the district court judge had "considered [the defendant's] case carefully").

## F. Alcohol, Tobacco, and Firearm Agent's Testimony

### 1. Standard of Review

The parties dispute the standard of review that applies to this issue, because they disagree about whether the issue was adequately preserved for appeal. Andre and Arthur argue that this Court should review the admission of all of Agent Pecora's testimony for an abuse of discretion.[7] They point out that Andre's attorney objected near the beginning of Agent Pecora's testimony, and, when the court overruled the objection, "[t]he ground for the ruling assumed that Pecora was allowed to interpret the tapes so long as her interpretation was reasonable," thus making any further objection "futile." While the Government agrees that this Court should review the specifically objected-to question and answer for an abuse of discretion, the Government claims that the rest of Agent Pecora's testimony should only be reviewed for

---

[7] In a letter filed pursuant to Federal Rule of Appellate Procedure 28(i), Arthur adopted Andre's arguments on this issue, and so we refer to Andre and Arthur as making these arguments together.

plain error.  The Government argues that the record does not support Arthur's and Andre's claim that further objection would be futile and that nothing about the objection suggested it applied to the testimony that followed.

Under certain circumstances, a party can preserve error without a formal objection.  *See United States v. Gerezano–Rosales*, 692 F.3d 393, 399 (5th Cir. 2012).  This can occur when "(1) '[t]he essential substance of the objection is obvious and was made known to the district court' and (2) the 'context of the [informal] objection and ruling' suggests that 'counsel was entitled to believe that further explanation would not be welcomed or entertained by the district court.'"  *Id.* (alterations in original) (quoting *United States v. Mendiola*, 42 F.3d 259, 261 n.2 (5th Cir. 1994)).

Neither of those circumstances is present here.  First, the language of the objection and the court's ruling only applied to that particular question and answer.  Andre's objection specifically stated "especially a sentence like that," and the court's ruling referred to Agent Pecora's interpretation of "that" sentence as "a fair statement."  Andre's objection also did not make the essential substance of all of his objections to Agent Pecora's testimony obvious.  He objected before the district court that "the words speak for themselves," but on appeal, he argues that Agent Pecora's testimony "went far beyond interpreting code" and "was improper and prejudicial."  Second, there is no evidence that the district court would not have entertained further explanation or objection in this case.  *But see United States v. Castillo*, 430 F.3d 230, 241–43 (5th Cir. 2005) (holding that a formal objection was not required where the district court's "evident anger" and "its unusual hostility toward the prosecutor" would have made further objection futile).  Thus, we will review the admission of the objected-to question and answer for an abuse of discretion, *see United States v. El–Mezain*, 664 F.3d 467, 511 (5th Cir. 2011), and the

decision to admit the rest of the testimony for plain error, *see Garcia–Gonzalez*, 714 F.3d at 315 (citation omitted).

2.  Analysis

Andre and Arthur argue that Agent Pecora's testimony went far beyond interpreting drug code and invaded the province of the jury.  The Government responds that Agent Pecora's testimony was properly admitted under Federal Rule of Evidence 701.  In support, the Government points to case law from this Circuit, in particular *El–Mezain*, 664 F.3d 467, and *United States v. Miranda*, 248 F.3d 434 (5th Cir. 2001), that, it argues, allows the type of testimony Agent Pecora gave in this case.

As an initial matter, we reject the Government's claims that *El–Mezain* and *Miranda* allow testimony like the testimony Agent Pecora gave in this case.  The Government is wrong to rely on the properly admitted, more limited testimony in those cases as support for Agent Pecora's much more extensive testimony in this case.  Agent Pecora's testimony exceeds anything we may have permitted in *El–Mezain* or *Miranda*.  Nevertheless, because the objection to the bulk of the testimony was not preserved for appeal, we can only review its admission for plain error.

After careful review, we hold that the district court did not plainly err in admitting the bulk of Agent Pecora's testimony.  In his brief, Andre states that this Court "has not discussed in a published opinion when a law enforcement officer's testimony goes beyond interpreting drug traffickers' jargon"; the Government agrees, explaining that it was unable to find "a published Fifth Circuit opinion addressing admissibility of inferences drawn from recorded conversations."  We have also been unable to find a binding case that offers guidance as to the admissibility of testimony like the testimony Agent Pecora gave in this case.  Because this question was unanswered at the time of trial and remains unanswered now, the district court's decision to admit the agent's

testimony was not plainly erroneous.  *See Henderson*, 133 S. Ct. at 1124–25; *see also Puckett v. United States*, 556 U.S. 129, 135 (2009) (explaining that for plain error to apply, "the legal error must be clear or obvious, rather than subject to reasonable dispute").

We turn next to the objected-to portion of Agent Pecora's testimony. Even assuming without deciding that the court abused its discretion in admitting that specific testimony, any error that may have occurred was harmless.  *See United States v. Morin*, 627 F.3d 985, 994 (5th Cir. 2010) (explaining that harmless error analysis applies even when the defendant objects to the district court's decision to admit testimony).  Beyond the one sentence of objected-to testimony, the jury considered a substantial amount of evidence, including the audio recordings and transcripts of the telephone calls that Agent Pecora interpreted before the jury.  This unobjected-to evidence provided a more than adequate basis to support the jury's decision in this case. *See supra* Part III(A)(2).

Thus, we hold that the district court did not plainly err in admitting the bulk of Agent Pecora's testimony and that any error in admitting the objected-to testimony was harmless.

## G.  Alleged Fourth Amendment Violation

### 1.  Standard of Review

The parties dispute whether Andre's claimed Fourth Amendment violation is reviewable on appeal.  While acknowledging that circuit precedent bars him from raising his alleged Fourth Amendment violation for the first time on appeal without showing cause, Andre claims that cause exists for two reasons.  First, he states that he sent a pro se letter to the district court explaining that he had asked his attorney to file a motion to suppress but that the attorney did not do so.  Alternatively, he argues cause exists because his

trial counsel provided ineffective assistance. At the very least, Andre argues, his Fourth Amendment claim should be reviewed for plain error.

The Government disagrees and argues that Andre's Fourth Amendment claim is procedurally barred and substantively undeveloped. The Government, relying on *United States v. Chavez–Valencia*, 116 F.3d 127 (5th Cir. 1997), claims that Andre cannot show cause for failing to raise the suppression issue before the district court. In fact, the Government argues, *Chavez–Valencia* specifically rejects the two grounds Andre asserts for cause.

We hold that Andre's allegation of a Fourth Amendment violation is unreviewable. Despite Andre's arguments to the contrary, *Chavez–Valencia* forecloses review of his claim. In *Chavez–Valencia*, we held that "the failure to raise a suppression issue at trial forecloses a defendant from raising the issue for the first time on appeal." *Id.* at 129. Our decision in *Chavez–Valencia* specifically considered—and rejected—the two arguments Andre raises as cause: (1) that the waiver was not voluntary and (2) ineffective assistance of counsel. As to the first issue, we observed that failing to follow Rule 12 typically is "not an intentional abandonment of the right to suppression," but that waiver nevertheless had "its usual legal consequences." *Id.* at 130. As to the second issue, we rejected the idea that ineffective assistance of counsel made the defendant's Fourth Amendment claim reviewable. *Id.* at 134. "Failure to file a suppression motion does not constitute per se ineffective assistance of counsel," and absent more information about why the attorney did not file the motion, we could not review the claim. *Id.*

There is nothing in Andre's brief that alters the rule articulated in *Chavez–Valencia* or makes it inapplicable here. While Andre filed a letter with the district court stating that he had asked his lawyer to file a motion to suppress, he sent that letter to the district court on December 30, 2011—two weeks after the jury had already returned a guilty verdict. Thus, the district

No. 12-31046

court did not have the opportunity to consider the suppression issue during the course of the trial.  As in *Chavez–Valencia,* we also decline to review Andre's claim that he received ineffective assistance of counsel.  Though he complained of his counsel's performance in his letters to the district court and during his sentencing hearing, the record is insufficiently developed to permit accurate review of this claim.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court.