# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2563

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District Missouri. |
| Jack Wayne Rogers, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 13, 2005
Filed: September 13, 2005

_____

Before LOKEN, Chief Judge, FAGG and BYE, Circuit Judges.

_____

LOKEN, Chief Judge.

Jack Wayne Rogers pleaded guilty to two counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2); five counts of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(1) & (b)(1); and three counts of distribution of obscene materials in violation of 18 U.S.C. § 1462. At a sentencing hearing held prior to the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), the district court[1] determined that the Guidelines sentencing range was 57 to 71 months in prison. The court then departed upward and

_____

[1]The HONORABLE SCOTT O. WRIGHT, United States District Judge for the Western District of Missouri.

sentenced Rogers to 360 months in prison.  The court's statement of reasons cited a victim's physical injury, see U.S.S.G. § 5K2.2, p.s.; Rogers's extreme conduct, see U.S.S.G. § 5K2.8, p.s.; and the large number of visual depictions, see U.S.S.G. § 2G2.4 (2002).  Rogers appeals the severe upward departure.  We affirm.

**I.**

The charges against Rogers resulted from warrant searches of his home and business.  Investigators seized computers and data storage devices on which they found at least 860 images of child pornography that included sexually explicit photographs of prepubescent children.  These images were the basis for the two counts of possessing child pornography.  Forensic analysis revealed that Rogers had distributed numerous e-mail attachments showing male children engaged in sexually explicit conduct, including  photographs of children chained and bound by ropes.  These images were the basis for the five counts of child pornography distribution.  Investigators also discovered numerous photographs of Rogers posing with severed male genitals, wearing them on his head, placing them in his mouth and apparently chewing them, placing them in a coffee cup or on a plate, and attaching severed penises together.  Evidence that Rogers e-mailed some of these images to others was the basis for the three counts of distributing obscene materials.  The evidence also included Internet "chat logs" in which Rogers discussed methods of torturing and mutilating children and bragged that he once abducted, raped, tortured, and murdered a blonde-haired boy from Skidmore, Missouri.  In Rogers's home, office, and van, investigators found surgical equipment, items used in bondage and torture, and books dealing with these subjects.

After Rogers pleaded guilty to all counts, the Presentence Investigation Report (PSR) recounted the above-summarized facts underlying the offense conduct. Applying the Guidelines effective November 1, 2002, the PSR assigned Rogers a total offense level of 24, a criminal history category of II based on a previous federal

child pornography conviction, and a recommended mandatory Guidelines sentencing range of 57 to 71 months. The PSR reported that charges were pending in state court accusing Rogers, who has no medical license, of surgically removing the male genitalia of a person who wanted a sex change in a motel room while an assistant photographed the "nullification" procedure, keeping the severed genitalia, and telling the assistant he ate them. The PSR concluded by suggesting that the court "may wish to consider an upward departure" pursuant to U.S.S.G. §§ 5K2.0, 5K2.8, and 2G2.4.

The government moved for an upward departure to 360 months, citing the physical injury to the person who received the motel room nullification, § 5K2.2; the heinous and brutal nature of the procedure, § 5K2.8; and Rogers's large collection of child pornography images, § 2G2.4.[2] Rogers opposed the motion, arguing that § 2G2.4 did not authorize a departure above the two-level increase for ten or more images mandated by § 2G2.4(b)(2), and that the extreme conduct and physical injury cited by the government did not relate to his child pornography possession and distribution offenses.

_____

[2]§ 5K2.2, p.s., recognizes that an upward departure may be warranted "[i]f significant physical injury resulted" and that "[t]he extent of the increase ordinarily should depend on the extent of the injury."

§ 5K2.8, p.s., recognizes that an upward departure may be warranted "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim" and lists as examples of extreme conduct "torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation."

Application Note 2 to § 2G2.4 (2002) provided that, "[i]f the offense involved a large number of visual depictions [of child pornography] , an upward departure may be warranted." Following passage of the PROTECT Act in 2003, which mandated increased penalties for child pornography offenses, § 2G2.4 was deleted and its substantive provisions consolidated in revised § 2G2.2. See U.S.S.G. Supp. App. C, amend. 664. The new provision imposes a 5-level increase for offenses involving more than 600 images. U.S.S.G. § 2G2.2(b)(7)(D).

At sentencing, the person who received the motel room nullification testified that she paid Rogers $750 for the four-hour procedure in which he removed her penis, scrotum, and testicles using only local anesthetics. Rogers told her he had performed "over a hundred" castrations and penectomies. Rogers placed her genitals in a plastic bag in the refrigerator. His assistant took photographs of the procedure which were subsequently posted on the Internet. The victim bled profusely during the operation and for six days thereafter, when she finally admitted herself to an emergency room. The emergency room urologist who treated her testified that she would have died from the bleeding if she had not come to the hospital that night. An acquaintance of Rogers testified that he had been present when Rogers performed several nullifications and had even photographed one such operation at Rogers's request. He further testified that Rogers said he assumed "ownership" of the severed genitals and "physically consumed" them, a claim consistent with the obscene photographs.

At the conclusion of the testimony the district court granted the government's motion to depart upward to 360 months, stating:

> I've heard the evidence here and the motion for upward departure. And I am going to depart upward. And based on the number of images, the extreme nature of the conduct, I can't imagine any more extreme conduct. And, of course, then it was a serious injury that -- it's a wonder she didn't die from it. Just a wonder.

The court imposed the statutory maximum of ten years for counts 1 and 2 (possession of child pornography), a consecutive sentence of twenty years for counts 3-7 (distribution of child pornography), and a concurrent sentence of five years, the statutory maximum, for counts 8-10 (distribution of obscene materials).

## II.

Rogers first argues that the district court violated his Sixth Amendment rights by departing upward on the basis of facts not found by a jury or admitted in his plea agreement. This argument is based on the subsequent decision in Blakely, whose impact on the federal Sentencing Guidelines was later defined in United States v. Booker, 125 S. Ct. 738 (2005). In response, the government argues that Rogers waived this claim in the plea agreement when he agreed "that his sentence will be determined and imposed pursuant to those Sentencing Guidelines" and that provisions increasing or decreasing his sentence "will be determined by the Court." Rogers replies that he did not waive the right to challenge an upward departure, which is certainly true. But "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant . . . consents to judicial factfinding." Blakely, 124 S. Ct. at 2541. Thus, Rogers waived the claimed Sixth Amendment rights in the plea agreement.

There remains an issue that Rogers did not raise -- whether the district court committed reversible error when it sentenced him under mandatory Guidelines that are now advisory under Booker. Arguably, Rogers waived this issue in the plea agreement when he agreed to "waive the right to appeal . . . any sentencing issue . . . which ha[s] been addressed and agreed upon in this Plea Agreement." Assuming the issue was not waived, it is a forfeited claim that we review for plain error. Nothing in the record establishes "a reasonable probability . . . that but for the [Booker] error [Rogers] would have received a more favorable sentence." United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005) (en banc). Thus, there was no plain error. As the Seventh Circuit said in affirming a substantial upward departure imposed on a child pornography offender, "[a] judge predisposed to exercising his discretion adversely to the defendant, knowing that Booker affords yet more latitude, might impose a sentence higher still; knowledge that freedom has increased would

-5-

not induce the judge to reduce the sentence." United States v. Cunningham, 405 F.3d 497, 505 (7th Cir. 2005) (quotation omitted).

## III.

Rogers next argues that the district court erred by departing upward without adequately stating, in open court and in the written judgment, "the specific reason for the imposition of a sentence" outside the Guidelines sentencing range. 18 U.S.C. § 3553(c)(2). We disagree.

The government's departure motion relied on specific Guideline provisions -- §§ 2G2.4, 4A1.3, 5K2.2, and 5K2.8. Rogers's pre-hearing memorandum responded on each issue. The government presented testimony at the sentencing hearing relating to the paragraphs in the PSR describing the motel room nullification procedure, the only relevant portion of the PSR to which Rogers objected on the ground that "these paragraphs are not supported by any evidence." At the end of the hearing, the district court stated that it was departing because of the numerous images, extreme conduct, and physical injury; by not including Rogers's allegedly inadequate criminal history category as an additional ground, the court rejected the government's motion for an upward departure under § 4A1.3. Thus, the court stated "specific reasons," reasons specifically addressed in the Guidelines, in the parties' pre-hearing memoranda, and at the hearing. The court's written statement of reasons was consistent with its statement in open court.

In these circumstances, we agree with the government that the court's statements, while cryptic, provide us with specific reasons for the departure that are sufficient for appellate review. See United States v. Aguilar-Lopez, 329 F.3d 960, 963 (8th Cir. 2003). This is not a case like United States v. Fuentes, 341 F.3d 1216, 1219 (10th Cir. 2003), where the district court "articulated no specific reason or exceptional circumstance warranting a departure." Nor is this case like United States

v. Tucker, 386 F.3d 273, 278 (D.C. Cir. 2004), where the district court in failing to state reasons for a departure "seemed intent on defying [the Guidelines] -- and 18 U.S.C. § 3553(c) to boot."

## IV.

Rogers next argues that the district court misapplied the Guidelines departure provisions by basing the upward departure on extreme conduct and physical injury which related to the adult victims of his nullification procedures, whereas his child pornography possession and distribution offenses are "victimless" crimes, and his obscenity offenses are limited to a five-year statutory maximum sentence, see 18 U.S.C. § 1462. Therefore, Rogers contends, the facts justifying an upward departure are insufficiently related to his offenses of conviction. This contention reflects a misunderstanding of sentencing under the Guidelines.

In deciding whether to depart from the applicable Guidelines range, the district court is not limited to considering "relevant conduct" as defined in U.S.S.G. § 1B1.3. Rather, "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." § 1B1.4. The permissible range of information includes dismissed or uncharged criminal conduct. § 5K2.21, p.s. The Second Circuit concluded that the uncharged conduct must "relate in some way to the offense of conviction" in United States v. Kim, 896 F.2d 678, 684 (2d Cir. 1990). That is doubtless true, but even a remote relationship will suffice. See United States v. Flores, 336 F.3d 760, 765 n.6 (8th Cir. 2003). Given this liberal standard, Rogers's conduct in performing the heinous and dangerous motel room nullification procedure is without a doubt sufficiently related at least to the obscenity counts of conviction to be considered for upward departure purposes.

-7-

When the defendant has been convicted of multiple offenses, the Guidelines sentencing range is determined by applying the grouping rules in Part 3D. A sentence equal to the "total punishment" is then imposed on each count (or the statutory maximum sentence, if less), and the individual sentences are imposed to run concurrently, unless the count carrying the highest statutory maximum is less than the total punishment, in which case consecutive sentencing is employed to produce a combined sentence equal to the total punishment. U.S.S.G. §§ 5G1.1(a), 5G1.2(d), 5G1.2, comment. (n.1). In this circuit, "the term 'total punishment' in § 5G1.2(d) includes a lawful upward departure." United States v. Evans, 314 F.3d 329, 332 n.1 (8th Cir. 2002), cert. denied, 539 U.S. 916 (2003). "Once the total punishment is determined, Part 5G directs the court to sentence multiple counts of conviction as an interdependent package, and to use consecutive as well as concurrent sentencing to construct a combined sentence equal to the total punishment." Id. at 334. Thus, Rogers's argument that his extreme conduct causing physical injury is only related to the counts having the lowest statutory maximum sentence is irrelevant. Because all the counts are sentenced as an "interdependent package," a permissible ground for departure on any count may be applied in determining the total punishment for the combined offenses.[3]

## V.

Finally, Rogers argues that the extent of the upward departure -- over twenty four years -- is unreasonable. Prior to Booker, the statute directed us to review

_____

[3]The contention also misrepresents the record. The district court based its departure in part on the large number of pornographic images that Rogers possessed and distributed, a permissible ground for departure on all ten counts of conviction. See U.S.S.G. § 2G2.4, comment. n.2 (2002). In addition, a departure under § 5K2.8 is warranted for the unusually cruel and degrading treatment of the child victims in the pornographic bondage images that Rogers was convicted of distributing. See United States v. Rugh, 968 F.2d 750, 755-56 (8th Cir. 1992).

whether the extent of a departure was unreasonable, "giv[ing] due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). Booker severed and excised § 3742(e), replacing it with a reasonableness standard we apply "across the board." 125 S. Ct. at 766. Both standards require that we review a departure in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). Our reasonableness review under Booker "is akin to . . . abuse of discretion review." United States v. Hadash, 408 F.3d 1080, 1083 (8th Cir. 2005).

Giving due regard to the § 3553(a) factors and to the sentencing record as a whole, we cannot say that the district court abused its discretion in imposing this substantial upward departure. Rogers's performance of numerous surgical nullifications without a medical license; his brutal and degrading conduct toward the motel room victim, inflicting injuries that almost killed her when he failed to seek appropriate medical care; his ingestion of severed male genitals and publication of this heinous conduct on the Internet; the exceptionally large number of pornographic and obscene images; his expressed interest in torturing children; his boast that he tortured, raped, and murdered a child -- these facts, taken together, are more than sufficient to warrant a substantial upward departure under U.S.S.G. §§ 5K2.2, 5K2.8, and 2G2.4 (2002). Though the length of the departure is atypical, it is comparable to the 213-month departure imposed on a sex offender who unintentionally killed a child while engaging in a risky form of sexual abuse, a departure affirmed by the Second Circuit in United States v. Reis, 369 F.3d 143, 151-53 (2nd Cir. 2004).

## VI.

In conclusion, we affirm the 360-month sentence imposed by the district court. We note, however, that the court did not correctly apply U.S.S.G. §§ 5G1.1 and 5G1.2 in determining the sentence to impose on each count of conviction. The five child pornography distribution counts carried the highest statutory maximum sentence, thirty years. Because that is equal to the 360-month total punishment, the

sentence imposed on each of those counts "shall be the total punishment," § 5G1.2(b), and "the sentences on all counts shall run concurrently," § 5G1.2(c). Because the remaining counts carried a statutory maximum of less than 360 months, the statutory maximum sentence for each of those counts "shall be the guideline sentence," § 5G1.1(a) -- ten years each on the two child pornography possession counts and five years each on the three distribution-of-obscene-materials counts, all to run concurrently. We remand the case to the district court for entry of a modified judgment consistent with the requirements of U.S.S.G. Part 5G (2002).

_____