IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2007

Charles R. Fulbruge III
Clerk

No. 06-10822

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRYAN NEWSOM,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and STEWART and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Bryan Newsom and Brett Garrett pled guilty to stealing explosive materials in interstate commerce and aiding and abetting the theft of explosive materials in interstate commerce in violation of 18 U.S.C. §§ 844(k) & 2. They timely appealed their sentences. Garrett filed an unopposed motion before this court to consolidate his appeal with Newsom's, which was granted. We now sever the appeals, and issue separate opinions. For reasons discussed below, we affirm the district court's sentence.

I. FACTS AND PROCEDURAL BACKGROUND

On January 22, 2006, Garrett and James Hardin decided to steal explosives from their former employer, the Fort Worth Crushed Stone Company. They called Newsom and informed him of their plot. Newsom agreed to provide them with a cutting torch so they could cut through the locks on the storage units containing the explosives. At around 11:00 p.m., Garrett and Hardin drove to Newsom's house to pick up the cutting torch, and it was decided that Newsom would drive Garrett and Hardin to the plant and drop them off at the front entrance gate. After stealing a variety of explosive materials, Garrett and Hardin carried the explosive materials to the highway, where Newsom was waiting to pick them up. They all agreed they would hide the explosives at Newsom's residence. Unbeknownst to Garrett and Hardin, Newsom relocated the explosives from his house to another location shortly thereafter.

Agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) quickly identified Hardin and Garrett as potential suspects and interviewed them about their involvement in the theft. They initially denied involvement, but agents discovered evidence connecting Garrett to the theft and obtained a warrant for his arrest. Garrett was arrested at his residence, and investigators found methamphetamine residue, ammunition, and multiple firearms during a subsequent search. After considerable questioning by agents, Garrett eventually admitted that he, Hardin, and Newsom had stolen the explosives and had taken the materials to Newsom's house. The agents then obtained a search warrant for Newsom's residence. While executing the search warrant at Newsom's house investigators observed four surveillance cameras, a signal detector for law enforcement body wires, and evidence of narcotics distribution and identity theft. Investigators also found six firearms, including two pistols with obliterated serial numbers. The possession of firearms violated the terms of Newsom's parole for a prior felony conviction. No explosives were found at the residence.

However, with Newsom's assistance the agents ultimately recovered all of the stolen material.

On March 31, 2006, Newsom pled guilty to aiding and abetting the theft of explosive materials in interstate commerce. Newsom's presentence report (PSR) calculated an offense level of fourteen and a criminal history category of III, providing for a guideline range of twenty-one to twenty-seven months. The probation officer stated that the district court may elect to depart upward for Newsom's sentence pursuant to United States Sentencing Guidelines (U.S.S.G.) § 5K2.21, which permits departures based on dismissed or uncharged conduct that reflects the actual seriousness of the offense and was excluded from the determination of the applicable guideline range. The probation officer highlighted the fact that Newsom had been found in illegal possession of six firearms, even though he had not been charged with any related misconduct. The probation officer explained that had Newsom been convicted of a firearm offense under 18 U.S.C. § 922, he would have been subject to a total offense level of twenty and a guideline range of forty-one to fifty-one months.

Newsom filed objections to the PSR and challenged the conclusion that he would have been subjected to an enhanced offense level had the Government charged him with firearms-related offenses. Additionally, he objected to the probation officer's proposed use of § 5K2.21, arguing that § 5K2.21 only permits an upward departure for uncharged offenses when the offenses reflect the actual seriousness of the crime charged. Therefore, according to Newsom, the proposed departure was improper under § 5K2.21 because his uncharged crime (i.e., illegal possession of firearms) did not concern the seriousness of the offense of conviction (i.e., theft of explosives).

Newsom's probation officer then filed an addendum to the initial PSR. The additional information, gathered from proffer interviews of Hardin, Garrett, and Newsom, explained that Newsom had sold Hardin and Garrett

methamphetamine from November 2005 until his arrest in January 2006. Further, a number of the firearms seized from Newsom's residence had been given to him by Hardin and Garrett in exchange for methamphetamine. The addendum to Newsom's PSR reiterated that the court could consider the firearms-related offenses as uncharged conduct under § 5K2.21. Newsom renewed his § 5K2.21 objections.[1]

Th district court overruled Newsom's objections and adopted the findings and conclusions of the PSR and its addendum. The court explained that it had decided to upwardly depart pursuant to § 5K2.21 based on its conclusion that Newsom was "almost a one-man crime wave," since he "was running a drug operation" and "trading guns for drugs." On July 14, 2006, Newsom was sentenced to forty-one months in prison and three years of supervised released. He timely filed his notice of appeal. On appeal, Newsom raises two central issues: (1) whether the district court erred in increasing Newsom's offense level pursuant to § 5K2.21 without finding that the uncharged conduct was related to the offense of conviction; and (2) whether the district court unreasonably sentenced Newsom to forty-one months of imprisonment.

## II. STANDARD OF REVIEW

Post-Booker, we employ a two-step process in reviewing sentences imposed by district courts. See United States v. Villegas, 404 F.3d 355, 361-62 & n.7 (5th Cir. 2005). First, we determine whether the district court properly interpreted and applied the sentencing guidelines. Id. at 361. We review a district court's interpretation and application de novo. United States v. Villanueva, 408 F.3d 193, 202 (5th Cir. 2005). If we reach the second step of the review process, we consider whether the sentence imposed is reasonable. United States v. Mares,

---

[1] The Government stated that it did not intend to prosecute Newsom for his drug activity or firearms possessions, and that it was not urging the district court to upwardly depart from Newsom's guidelines range.

402 F.3d 511, 519 (5th Cir. 2005). Reasonableness review necessitates that we review a district court's decision to depart and the extent of the departure for abuse of discretion. United States v. Desselle, 450 F.3d 179, 182 (5th Cir. 2006), cert. denied, 127 S. Ct. 1148 (2007).

## III. ANALYSIS

Newsom argues that the district court erred when it upwardly departed at sentencing pursuant to § 5K2.21 based on his uncharged conduct involving drug distribution and unlawful firearms possession. He contends that § 5K2.21 permits an upward departure for uncharged conduct only if the conduct is related to the offense of conviction. We have only addressed § 5K2.21 generally in a limited number of cases, and so Newsom's appeal presents an issue of first impression for our court.

Section 5K2.21 states:

> The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

§ 5K2.21. This section was added to the Sentencing Guidelines in 2000 to address a circuit conflict "regarding whether a court could base an upward departure on conduct that was dismissed or not charged as part of a plea agreement in the case." U.S.S.G. § 5K2.21, Historical Notes. In adopting § 5K2.21, the Sentencing Commission endorsed the position held by the majority of circuits: a departure based on conduct uncharged or dismissed pursuant to a plea agreement was proper and did not undermine the expectations of the parties to the plea agreement. See id. However, Newsom asserts that the phrase "to reflect the actual seriousness of the offense" limits the application of

§ 5K2.21 to uncharged conduct that has a factual relationship to the offense of conviction.

The Sentencing Commission has never explicitly commented on whether a factual relationship is required between the uncharged or dismissed charges and the offense of conviction. Nevertheless, § 5K2.21's historical notes favorably reference a number of cases where circuit courts held that an upward departure was only permissible if there was a relationship between the uncharged and charged offenses. See United States v. Kim, 896 F.2d 678, 682-84 (2d Cir. 1990); United States v. Baird, 109 F.3d 856, 865 (3d Cir. 1997); United States v. Cross, 121 F.3d 234, 239 (6th Cir. 1997). Similarly, since the adoption of § 5K2.21, the majority of other circuits appear to require the existence of some connection between uncharged conduct and the offense of conviction. See United States v. Ellis, 419 F.3d 1189, 1193 (11th Cir. 2005) (finding that defendant could not be subject to upward departure for witness tampering and suspected civil rights violations where guilty pleas was for making false statement to FBI); United States v. Rogers, 423 F.3d 823, 828 (8th Cir. 2005) (holding that creating obscene images and sexually torturing victims sufficiently related to conviction for possession and distribution of obscenity); see also United States v. Smith, 267 F.3d 1154, 1164 (D.C. Cir. 2001) ("[T]he conduct forming the basis for the departure must be descriptively or logically, and not merely temporally, connected to the crime for which the defendant was actually convicted."). However, the case law also suggests that the relationship does not have to be a particularly close one. In Kim, the Second Circuit concluded that the uncharged conduct must only "relate in some way to the offense of conviction." 896 F.2d at 684 (emphasis added). Similarly, the Eighth Circuit in Rogers stated that "even a remote relationship will suffice." 423 F.3d at 828 (citing United States v. Flores, 336 F.3d 760, 765 n.6 (8th Cir. 2003)).

We are also aware that case law from other circuits can be interpreted as requiring a closer connection between the uncharged conduct and the offense of conviction. For example, the First Circuit has written: "Upward departures are allowed for acts of misconduct not resulting in conviction, as long as those acts . . . relate meaningfully to the offense of conviction." United States v. Amirault, 224 F.3d 9, 12 (1st Cir. 2000). But we decline to adopt such a stringent reading of § 5K2.21. The Sentencing Commission explained: "This amendment allows courts to consider for upward departure purposes aggravating conduct that is dismissed or not charged in connection with a plea agreement." U.S.S.G. § 5K2.21, Historical Notes. Thus, we join those other circuits, such as the Eighth Circuit, in interpreting § 5K2.21 as requiring some degree of connection between uncharged and charged offenses, although even a remote connection will suffice. Turning to the facts of this case, we conclude that Newsom's argument is without merit. Newsom's uncharged conduct involves drug distribution and illegal firearm possession. Given that Newsom and his co-defendants, Hardin and Garrett, had a history of trading guns for drugs, and were all high on drugs the night they stole the explosives, we find that there is a sufficient connection between the uncharged and charged offenses. As such, the district court did not err when it relied on § 5K2.21 as the basis for its upward departure.

We next determine whether the district court's forty-one month sentence was reasonable. Newsom contends that it was unreasonable because he provided law enforcement with substantial assistance, and that the government, far from urging the district court to upwardly depart, actually asked the court to consider Newsom's request for a downward departure based on the assistance he had provided. Despite Newsom's cooperation and the government's disinterest in an upward departure, we conclude that the district court did not abuse its discretion while sentencing Newsom. It carefully considered all of the evidence as well as the factors under 18 U.S.C. § 3553(a), and imposed the

sentence it deemed as reasonable. We refuse to disturb that determination. Newsom's sentence was increased by fourteen months based on his criminal and dangerous uncharged conduct, and we have previously upheld similar and much larger departures as reasonable. See United States v. Lambert, 984 F.2d 658, 664 (5th Cir. 1993) (eighteen-month departure upheld); United States v. Lee, 989 F.2d 180, 183 (5th Cir. 1993) (sixty-five month departure upheld); United States v. Ashburn, 38 F.3d 803, 810 (5th Cir. 1994) (en banc) (102-month departure upheld).

## IV. CONCLUSION

It is ordered that this appeal be SEVERED from No. 06-10788. Further, for the foregoing reasons, the sentence of the district court is AFFIRMED.