# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10461

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CALEB DEASON,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CR-158

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

A jury convicted Defendant-Appellant Caleb Deason of: (1) one count of wire fraud in violation of 18 U.S.C. § 1343 and (2) one count of money laundering in violation of 18 U.S.C. § 1957.[1]  On appeal, Deason challenges his

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Although § 1957 defines the offense as "[e]ngaging in monetary transactions in property derived from specified unlawful activity," it is often referred to as "money laundering," *see United States v. Fuchs*, 467 F.3d 889, 906-07 (5th Cir. 2006), and we will employ the same shorthand.

No. 14-10461

conviction, his sentence, and the court's restitution order, each of which we affirm.

## I.  Facts & Proceedings

Deason worked as a financial planner and independent insurance agent in Fort Worth, Texas.  One of his clients was Daniel Secker.  With Deason's assistance, Mr. Secker purchased a new life insurance policy issued by Transamerica Life Insurance Company ("Transamerica"), which took effect in December 2011.  The Transamerica policy was intended to replace Mr. Secker's other life insurance policy which was issued by ING.  Shortly thereafter, Mr. Secker died.  At the time of his death, both of those policies were still in effect.  Deason contacted Transamerica and told them that he would handle the claim of the beneficiary, Mr. Secker's widow, because he (Deason) was close to the Secker family.

After a series of exchanges over several weeks with the widow and her sister-in-law, who had been acting as a go-between, and with his Transamerica contact, Deason eventually sent a wire transfer form to Transamerica that he had created listing Mrs. Secker as the payee but also listing his Wells Fargo account number. He received an email saying that the claim had "been processed and submitted for approval," and that the "wire payment should be in the beneficiary's account by the end of the week."  The next week, he realized that $1,004,028.41 had been deposited into his own Wells Fargo account. Three days after the money was deposited in his account, Deason texted Mrs. Secker's sister-in-law and explained that Transamerica was still investigating the claim because Mr. Secker had died during the policy's contestability period.[2]  Deason then transferred the policy's proceeds that he had received to

---

[2] Ten days later, Deason sent another email expressing similar hesitations about the possibility of payment to Mrs. Secker's sister-in-law.

No. 14-10461

his savings accounts in three separate amounts. A week or so later, he withdrew approximately $67,133.00 from one of his savings accounts and used these funds to obtain a cashier's check, with which he purchased a used Land Rover. He then opened two new accounts with Wells Fargo and deposited the balance remaining from the Transamerica proceeds (approximately $933,000.00) into the newly-created accounts.

In September 2013, a grand jury charged Deason with the above-said counts, one for wire fraud and the other for engaging in monetary transactions in property derived from specified unlawful activity. During the trial, Deason filed a motion for a judgment of acquittal at the close of the government's case and renewed his motion post-verdict, claiming in both that the evidence was insufficient to support his conviction. The trial court denied both motions. After a two-day trial, the jury returned guilty verdicts on each count.

The presentence report ("PSR") recommended that the court increase Deason's offense level by two levels pursuant to U.S.S.G. § 3C1.1 for obstruction of justice because his sworn testimony was inconsistent with the evidence presented by the government. The PSR also suggested that, pursuant to U.S.S.G. § 4A1.3(a)(1), an upward departure to his sentence might be warranted based on reliable information that his criminal history category of I underrepresented his situation, *viz.*, the likelihood that he would commit other crimes. Relative to this appeal, Deason challenged the obstruction of justice enhancement on the ground that his testimony at trial was truthful, but he indicated that he did not intend to present any further evidence regarding this objection.

Deason filed written objections, which he renewed during the sentencing hearing. The trial court overruled his obstruction of justice objection, explaining that it had reviewed the trial transcript and concluded that Deason gave several false answers during the trial which were designed to mislead the

No. 14-10461

jury. The court adopted the factual findings of the PSR, as modified or supplemented by an addendum, and concluded that Deason's total offense level was 28. Combined with his criminal history category of I, the guideline imprisonment range was 78 to 97 months. After providing Deason and his counsel an opportunity to speak on his behalf, the court imposed an above-guidelines sentence of 120 months and ordered Deason to make restitution to Transamerica in the amount of $99,491.75.

## II.  Analysis

In his "kitchen sink" appeal, Deason presents roughly a dozen challenges to his conviction, sentence, and restitution order.  We first consider the issues he preserved, then address the contentions that he raises for the first time on appeal.

### A.    Preserved issues

#### 1.    Count One (wire fraud): insufficient evidence

Deason claims that the evidence adduced at trial was insufficient to support his conviction for the conduct charged in Count One because: (1) Count One charges a wire from a bank in Iowa, and (2) there is insufficient evidence to support the interstate-commerce nexus.  Deason preserved his objection to the sufficiency of the evidence by filing motions for a judgment of acquittal, so we review that objection *de novo*.[3]  The standard for such a claim is high: "In reviewing the sufficiency of the evidence, we view the evidence and the inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt."[4]

---

[3] *United States v. Harris*, 740 F.3d 956, 962 (5th Cir. 2014).

[4] *United States v. Brown*, 553 F.3d 768, 780 (5th Cir. 2008) (quoting *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007)) (internal quotation marks omitted).

No. 14-10461

The elements of wire fraud, as set out in 18 U.S.C. § 1343, are: (1) a scheme to defraud, (2) the use of wire communications, and (3) a specific intent to defraud.[5]  Deason's challenge relates to the second element, the use of wire communications.  Claiming that Count One of the indictment charges a wire from a bank located in *Iowa*, he contends that the evidence presented at trial showed a wire to his Wells Fargo account from a bank located in *New York*, and insists that the evidence is thus insufficient to convict him for the conduct charged.  Count One charges:

> On or about April 5, 2012, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, Caleb Deason, . . . caused to be transmitted, by means of wire and radio communications in interstate commerce . . . a wire transfer of approximately $1,004,028.41 from HSBC Bank USA on behalf of Transamerica Life Insurance Company, located in Cedar Rapids, Iowa, to the defendant's Wells Fargo Bank account, located in the state of Texas.

We are unpersuaded by Deason's deliberate misreading of this charge.  Count One does not list the location of HSBC Bank USA as Iowa; rather, it states that *Transamerica* is located in Cedar Rapids, Iowa.[6]

Relying on the same misreading of Count One, Deason contends that, because the United States did not adduce evidence that the charged wire was transmitted from Iowa into another state, his conviction for wire fraud must be reversed for lack of evidence regarding a nexus to interstate commerce.  For substantially the same reasons expressed in the prior paragraph, we reject

---

[5] *United States v. Benns*, 740 F.3d 370, 375 (5th Cir. 2014).

[6] The jury heard testimony that Transamerica is located in Cedar Rapids, Iowa.

Deason's claim that there is insufficient evidence of the wire's nexus to interstate commerce because Count One charged an "Iowa bank wire."[7]

## 2.    Count Two (money laundering): insufficient evidence

Deason also attacks the sufficiency of the evidence to support his conviction for the conduct charged in Count Two, claiming that: (1) a cashier's check is not expressly defined as a "monetary instrument" in § 1956(c)(5) so his purchase of the cashier's check does not support his conviction under § 1957(a); (2) there is insufficient evidence to show that he "knew" the property with which he purchased the cashier's check was criminally-derived; and, (3) there is no evidentiary support for concluding that his purchase of the cashier's check implicated interstate commerce. Deason preserved his sufficiency of the evidence challenge, so we review these claims *de novo*.[8]   To repeat, our review is highly deferential to the jury's verdict.[9]

We consider first Deason's contention that his purchase of the cashier's check does not constitute a "monetary transaction" under § 1957(a) because a cashier's check is not defined as a "monetary instrument" in 18 U.S.C. § 1956(c)(5).  The statutory language of §§ 1956 and 1957, and our precedent, foreclose his theory.  First, a "monetary transaction" is defined in § 1957(f)(1) as "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds *or* a monetary instrument . . . by, through, or to a financial institution . . ., *including* any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title."[10]   A "financial transaction" is defined under § 1956(c)(4)(B) as a "transaction involving the

---

[7] To the contrary, the record is replete with evidence concerning the charged wire's nexus to interstate commerce.

[8] *Harris*, 740 F.3d at 962.

[9] *See id.*

[10] 18 U.S.C. § 1957(f)(1) (emphasis supplied).

No. 14-10461

use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree."[11]

Deason's purchase of a cashier's check constitutes a "monetary transaction" for the purpose of § 1957(a) in two ways: (1) It constitutes a "transfer, or exchange . . . of *funds* . . . by, through, and to a financial institution," and (2) it constitutes a "transaction involving the use of a financial institution . . . which affect[s] interstate . . . commerce."[12]  We are satisfied that his conduct falls within § 1957(a) even though cashier's checks are not expressly included on the list of "monetary instruments" in § 1956(c)(5).

Deason next claims that the trial record lacks the "necessary direct or circumstantial evidence" to support the jury's conclusion that he knew the $67,133.00 he withdrew to purchase the cashier's check was criminally-derived.  Although he offers no countervailing evidence, claiming that he is "unable to cite record pages from which requisite evidence is absent," he ignores the fact that the jury was free to disregard his testimony as not credible.  He testified that he assumed that the $1,004,028.41 which appeared in his Wells Fargo account was the result of an unrelated large deal that he had been working on for some time.  But, the jury also heard testimony from a Transamerica representative that Deason did not have any commissions in the pipeline that would amount to approximately a million dollars, and that his total earnings from Transamerica totalled less than $30,000.00 *since* he had enrolled as an independent producer for the company in 2006.  "The jury is the final arbiter of the weight of the evidence, and of the credibility of witnesses,"

---

[11] 18 U.S.C. § 1956(c)(4)(B).

[12] *See, e.g., United States v. Mejia*, Nos. 97-50353, 97-50234, 97-50235, 1998 WL 895380, at *6 (9th Cir. Dec. 17, 1998) (per curiam) ("The purchase of the cashier's check did have an effect on interstate commerce because the cashier's check was purchased at a bank engaged in interstate commerce.").

so we will not disturb its finding on appeal.[13]   The record is replete with evidence from which a reasonable jury could conclude that Deason knew that the money in question was criminally-derived.

Finally, Deason claims that the evidence is insufficient to support the conclusion that his purchase of the cashier's check had even a "minimal nexus" to interstate commerce.  Our precedent, and that of other circuits, forecloses his challenge.  Like § 1956, the money laundering statute, § 1957 regulates conduct that, in the aggregate, has a substantial effect on interstate commerce.  And, we have held that the link to interstate commerce need only be slight in such cases.[14]  The evidence adduced at Deason's trial meets this threshold.  The jury heard testimony that Deason purchased the cashier's check from a Wells Fargo branch and that Wells Fargo is a bank that is insured by the FDIC with branches across the United States. "Proof that a savings institution's accounts are federally insured is certainly sufficient to prove that the transaction involved a financial institution the activities of which affect interstate commerce under 18 U.S.C. § 1956(c)(4)(B)."[15]   The evidence is sufficient to support the jury's conclusion that Deason's purchase of the cashier's check had at least a "minimal nexus" to interstate commerce.

---

[13] *United States v. Restrepo*, 994 F.2d 173, 182 (5th Cir. 1993).   We accept "all credibility choices and reasonable inferences made by the trier of fact that tend to support the verdict." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)) (internal quotation mark omitted).

[14] *See United States v. Meshack*, 225 F.3d 556, 572 (5th Cir. 2000) (citing *United States v. Westbrook,* 119 F.3d 1176, 1191 (5th Cir. 1997)) (*overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002)).  Section 1957 requires only that these transactions have a "de minimis effect" or "minimal impact" on interstate commerce. *See United States v. Benjamin*, 252 F.3d 1, 5, 9 (1st Cir. 2001).

[15] *United States v. Leslie*, 103 F.3d 1093, 1103 (2d Cir. 1997).

No. 14-10461

### 3.   U.S.S.G. § 3C1.1 enhancement

Deason claims that the court erred in applying U.S.S.G. § 3C1.1 to his sentence because his trial testimony did not support the application of that section's enhancement.   Deason preserved his objection, so we review the court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error.[16]

Section 3C1.1 provides for a two-level increase to a defendant's offense level if he (1) "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction," and (2) "the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct . . . ."[17]  For the purpose of this enhancement, a defendant obstructs justice when he perjures himself.[18]   A witness perjures himself when he gives "[1] false testimony concerning [2] a material matter with [3] the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."[19] When a defendant objects to a sentence enhancement that results from his trial testimony, the district court "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice."[20]   In doing so, however, the court need not expressly find that false testimony concerned a material matter when materiality is obvious.[21]   In

---

[16] *United States v. Perez-Solis*, 709 F.3d 453, 469 (5th Cir. 2013) (footnote omitted); *United States v. Miller*, 607 F.3d 144, 148 (5th Cir. 2010) ("For an obstruction of justice enhancement, we likewise review the district court's factual findings for clear error.").

[17] U.S.S.G. § 3C1.1.

[18] *Perez-Solis*, 709 F.3d at 469 (footnote omitted).

[19] *Id.* (alterations in original) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)) (internal quotation mark omitted).

[20] *Id.* (quoting *Dunnigan*, 507 U.S. at 95).

[21] *Id.* at 470.

No. 14-10461

making its factual findings in support of the application of § 3C1.1, the court may adopt adequate findings in a PSR.[22]

As noted, Deason filed a written objection to the § 3C1.1 enhancement, and he renewed his objection during the sentencing hearing. The district court explained why it thought the enhancement was proper:

> I heard the defendant's testimony, and I didn't hear too much truthfulness come from the stand while the defendant was on the stand. If you were to go through and take up each answer that was a false answer, you would – you would spend a lot of time doing it. [Cites examples of false testimony] . . . . I'm not going to take the time to go through all of the false answers he gave. Every one he gave – and the probation officer has correctly indicated in paragraph 19 of the presentence report the different place in the record where he gave false testimony . . . . In each instance, it was material to the issues that were being decided by the jury . . . .

We agree with the district court's summation. Apart from Deason's contention that his own juried testimony, in context, does not support the enhancement, he offers no evidence to refute the factual findings contained in the PSR which laid out the multiple instances in which he perjured himself during trial. We therefore affirm the district court's application of § 3C1.1 to his sentence.

### 4.    Substantive reasonableness

Deason also challenges the above-guidelines sentence imposed by the court as substantively unreasonable, claiming that the court: (1) failed properly to consider and weigh the § 3553(a) factors, and (2) improperly relied on uncharged conduct recounted in the PSR. Deason objected to the substantive reasonableness of the sentence following its imposition, so we review the "substantive reasonableness of the sentence imposed under an

---

[22] *Id.*

abuse-of-discretion standard."[23]  When reviewing an above-guidelines sentence for substantive unreasonableness, (1) we consider "the totality of the circumstances, including the extent of any variance from the Guidelines range," and (2) we accord deference to the district court's decision that the § 3553(a) factors support the sentence.[24]

On appeal, Deason contends that the trial court erred in failing to consider mitigating factors, *e.g.*, the letters of support submitted by his friends and family, and that, as his counsel put it, "he's not really different than most of the white-collar fraud defendants . . . across the nation."  To the contrary, the district court thoroughly considered the § 3553(a) factors and acknowledged the letters of support:

> One of the factors are the nature and circumstances of the offense.  And, of course, the nature and circumstances of the offense is that he tried to steal a million dollars from a widow, by way of her insurance benefits that were due to her through her purchase of an insurance policy through the services of the defendant . . . . Well, from what I heard, he's amoral, period . . . . He's a good flimflam man, as evidenced by all these letters I've received from people that say he's – he is a good person, and I suppose that's typical of a good con man . . . . When I consider all of the factors the Court should consider in sentencing, to protect the public from further crimes of the defendant, he simply doesn't know how to function without swindling somebody, at least the indication so far is, and I don't know that there's any cure for that, other than confinement.

---

[23] *United States v. Rodriguez*, 660 F.3d 231, 233 (5th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)) (internal quotation mark omitted).

[24] *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (internal quotation marks omitted).

No. 14-10461

We are satisfied that the sentence imposed is substantively reasonable. Despite Deason's contention that the trial court failed to consider the § 3553(a) factors thoroughly, the record compels the opposite conclusion. That court explained at length its reasons for imposing an above-guidelines sentence. Deason's claim on appeal amounts to nothing more than a disagreement with the court's weighing of the § 3553(a) factors, so we conclude that the court did not abuse its discretion. Our precedent makes clear that we do not reweigh factors or reexamine their relative import; neither do we reverse a sentencing court on the basis that, in our estimation, a different sentence would be proper.[25]

Further, Deason's contention that the sentencing court improperly relied on uncharged conduct is without any basis in the law. Our precedent holds that, at sentencing, the court is not precluded from considering uncharged conduct incorporated into the PSR and its guidelines calculation.[26] And, although Deason does not clearly articulate the extent of the variance as a basis for reversal, we note *sua sponte* that the instant variance is not significant when compared to much greater variances we have affirmed.[27]

## B.    Issues raised for first time on appeal

### 1.    Count Two (money laundering): sufficiency of indictment

Deason claims that Count Two of the indictment is defective because it failed to charge that he knew the transaction involved criminally-derived property, asserting that this prejudiced his defense. Specifically, he contends that the word "knowingly," as used in Count Two, applies only to his efforts to engage in a monetary transaction, and not to the subsequent qualifier "in

---

[25] *See id.*

[26] *See United States v. Newsom*, 508 F.3d 731, 735 (5th Cir. 2007).

[27] *See Brantley*, 537 F.3d at 348, 350 (upholding 253% variance); *United States v. Jones*, 444 F.3d 430, 441-42 (5th Cir. 2006) (more than double variance).

No. 14-10461

criminally derived property of a value greater than $10,000." Deason failed to object in the district court, so we review the sufficiency of the indictment for plain error.[28]

"To be sufficient, an indictment must conform to minimal constitutional standards, standards that are met where the indictment alleges every element of the crime charged and in such a way as to enable the accused to prepare his defense . . . ."[29] Count Two charges:

> On or about April 24, 2012, in the Fort Worth Division of the Northern District of Texas, Caleb Deason, the defendant, did knowingly engage and attempt to engage in a monetary transaction, by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the purchase of a cashier's check in the amount of approximately $67,133, such property having been derived from a specified unlawful activity, that is, Wire Fraud, in violation of 18 U.S.C. § 1343.

Count Two essentially tracks the language of 18 U.S.C. § 1957(a), which is the statute under which Deason was convicted: "Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity shall be punished. . . ."[30]

Deason's challenge to the sufficiency of the indictment is grounded in a deliberate misreading of Count Two and § 1957(a). "As a matter of ordinary

---

[28] *United States v. Hoover*, 467 F.3d 496, 498 (5th Cir. 2006). Plain error review involves four prongs: (1) There must be an error or defect; (2) the legal error must be clear or obvious; (3) the error must have affected the appellant's substantial rights; and, (4) if the first three prongs are satisfied, the appellate court has the discretion to remedy the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[29] *United States v. Partida*, 385 F.3d 546, 554 (5th Cir. 2004).

[30] 18 U.S.C. § 1957(a).

English grammar, it seems natural to read [a] statute's word 'knowingly' as applying to all the subsequently listed elements of the crime."[31]  This is consistent with the manner in which courts usually interpret criminal statutes, i.e., "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."[32]  Moreover, even if we assume *arguendo* that Deason was unaware that "knowingly" modifies criminally-derived property, any putative prejudice is belied by the fact that he defended himself at trial by claiming that he did not know the funds in his bank account were criminally derived.  Several months prior to trial, he filed a proposed jury charge listing the "knowledge" element as it applied to the criminally-derived property element.  For him to contend on appeal that the indictment is insufficient because he had no idea that "knowingly" applies to "criminally derived property" stretches his credulity beyond the breaking point.  We are satisfied that Count Two of the indictment is constitutionally sufficient.

**2.    Count One (wire fraud): false evidence and improper venue**

Deason presents a series of related challenges to his conviction for wire fraud that relies on what he describes as "newly discovered and available evidence."  This evidence comprises only his own affidavit that relates to one exchange between an unnamed "individual working on my behalf" and a Wells Fargo customer service representative.  The Wells Fargo employee purportedly stated to the unnamed individual that Wells Fargo has only "one wire room, where all incoming wires are received and posted . . . [that is] located [in] . . . San Francisco, California." Relying solely on his own affidavit, Deason contends that (1) the government violated his right to due process by

---

[31] *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009).
[32] *Id.* at 652.

14

knowingly presenting false testimony about the wire transfer, so the court should order a new trial; and, (2) his conviction should be vacated based on improper venue. Because he contests venue for the first time on appeal, his challenge is waived.[33]   And, we review his claim that the government knowingly presented false testimony for plain error only because he did not move for a new trial on this basis or otherwise alert the district court to his objection.[34]

To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show that "(1) the statements in question are shown to be false; (2) the prosecution knew they were false; and (3) the statements were material."[35]   We note at the outset that Deason's affidavit – the only "evidence" he submits in support of his claim that the government knowingly presented false testimony – is inadmissible hearsay and cannot be used to obtain a new trial.[36]  But, even if we were to assume the veracity of the hearsay statements contained in his affidavit and their

---

[33] Deason contends that he preserved his venue objection by filing a motion to acquit under Rule 29(a) and (c). Appellant's Brief at 53. We disagree. *See United States v. Rodriguez-Lopez*, 756 F.3d 422, 430 (5th Cir. 2014) ("A defendant waives his right to contest venue on appeal, however, when his motion for acquittal [at the close of the government's evidence] fails to put the court and the United States on notice of the challenge to venue."). Deason moved for acquittal at the close of the government's presentation of evidence "on the grounds that the evidence is insufficient to sustain a conviction at this time." As he did not articulate any challenge to venue, his challenge is waived. *See id.*; *United States v. Carbajal*, 290 F.3d 277, 288 n.19 (5th Cir. 2002).

[34] *See United States v. Houston*, 648 F.3d 806, 813 (9th Cir. 2011); *United States v. Caballero*, 277 F.3d 1235, 1243-44 (10th Cir. 2002). By neglecting to file a motion for a new trial on the basis of the newly-discovered evidence, Deason failed to provide the district court an opportunity to correct the now-alleged error. *United States v. Nixon*, 918 F.2d 895, 905 (11th Cir. 1990); *cf. United States v. Blackthorne*, No. 00-51256, 2002 WL 971621, at *15 (5th Cir. May 3, 2002) (declining to resolve whether plain error applies when a defendant fails to raise a *Napue* objection in the district court).

[35] *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997).

[36] *See United States v. Anderson*, 755 F.3d 782, 800 (5th Cir. 2014); *United States v. Fleming*, 540 F. App'x 344, 346 (5th Cir. 2013) (per curiam) (defendant's affidavit containing hearsay insufficient evidence to support a motion for a new trial); *United States v. Neuman*, 505 F. App'x 308, 309 (5th Cir. 2013) (same).

No. 14-10461

admissibility, we would conclude that he has failed to make out any due process violation. The evidence adduced at trial included (1) a copy of the wire transfer form authorizing Transamerica to wire the funds to Deason's Wells Fargo account and (2) his bank account statement reflecting a wire transfer of $1,004,028.41 from HSBC Bank USA to his Wells Fargo account. Even if Deason's unverified and inadmissible statement were true, it would create, at most a conflict with the evidence adduced at trial concerning Wells Fargo's wire procedures. It would not establish that the evidence and testimony concerning the wire at issue are "actually false."[37] Deason has failed to make out a due process violation on the basis of the information contained in his affidavit.

### 3. Counts One and Two: double jeopardy

Deason contends further that his conviction and sentence for both wire fraud and money laundering violate the Fifth Amendment's Double Jeopardy Clause. Specifically, he claims that, because he was convicted of knowingly purchasing a cashier's check with proceeds from a wire fraud crime, the § 1957(a) charge incorporated all of the essential elements of his wire fraud offense under § 1343, thereby merging the two offenses under *Blockburger v. United States*. He failed to raise this claim before the district court, so we review it for plain error only.[38]

The Double Jeopardy Clause prohibits multiple punishments for the same offense.[39] "When a defendant challenges multiple punishments for the same conduct—rather than multiple prosecutions—our double jeopardy analysis turns on whether Congress has authorized the result at issue."[40]

---

[37] *See Kimmel v. Quarterman*, 199 F. App'x 338, 344-45 (5th Cir. 2006) (citing *United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004)).

[38] *United States v. Odutayo*, 406 F.3d 386, 392 (5th Cir. 2005).

[39] *United States v. McRae*, 702 F.3d 806, 839 (5th Cir. 2012).

[40] *Id.* (citation and internal quotation mark omitted).

No. 14-10461

When, in one prosecution, a defendant is convicted of multiple counts stemming from the same criminal conduct, our review is limited to whether Congress intended multiple convictions and sentences under the statutes.[41] We discern the intent of Congress by parsing the statutory language and reviewing the legislative history.[42]

Section 1957, which was enacted as part of the Money Laundering Control Act of 1986, forbids engaging in monetary transactions involving criminally-derived property. The essential elements are: (1) the defendant engages or attempts to engage (2) in a monetary transaction (3) in criminally-derived property (4) knowing that the property is derived from unlawful activity, and (5) the property is derived from "specified unlawful activity," which is defined in 18 U.S.C. § 1956(c)(7).[43] Here, the specified unlawful activity is wire fraud, which is punishable under 18 U.S.C. § 1343.

The government had to prove the essential elements of wire fraud to establish a violation of 18 U.S.C. § 1957. Thus, we cannot rule that each statutory provision "requires proof of a fact that the other does not."[44] Contrary to Deason's contention, the *Blockburger* test, however, is not dispositive; it is solely a rule of statutory construction. "Insofar as the question is one of legislative intent, the *Blockburger* presumption . . . yield[s] to a plainly expressed contrary view on the part of Congress."[45] Our review of the statute's text and legislative history reflects that Congress intended that the conduct defined in 18 U.S.C. § 1957 should be punished as a separate offense, in addition to, and not as a substitute for, the underlying specified unlawful

---

[41] *See Garrett v. United States,* 471 U.S. 773, 779 (1985).

[42] *Id.*

[43] 18 U.S.C. § 1957.

[44] *United States v. Lovett*, 964 F.2d 1029, 1041-42 (10th Cir. 1992) (internal quotation mark omitted).

[45] *Garrett*, 471 U.S. at 779.

17

activity.[46]   Deason's convictions under 18 U.S.C. § 1343 and § 1957 do not violate the Double Jeopardy Clause.

### 4.     Improper questioning

Deason claims that the district court's questioning during the trial violated his Fifth and Sixth Amendment rights to a fair trial by an impartial jury.  He contends that the court posed pointed, attacking questions undermining his credibility and chosen defense strategy.  Deason accepted the court's proposed curative instruction, so he failed to preserve his objection to the court's questioning and plain error review applies.[47]

Federal Rule of Evidence 614 permits a trial judge to call or examine a witness.[48]  "A trial judge has wide discretion over the 'tone and tempo' of a trial and may elicit further information from a witness if he believes it would benefit the jury," but its efforts to move the trial along may not interfere with its "strict impartiality."[49]  We have stressed that "[o]ur review of the trial court's actions must be based on the entire trial record" and that we will conclude that a

---

[46] *See* THE MONEY LAUNDERING CRIMES ACT OF 1986, S. REP. NO. 99-433, at 4 (1986) (noting the importance of "enacting a *new* Federal offense against money laundering") (emphasis supplied); *see also United States v. Kirkland*, Nos. 93-2231, 93-2313, 1994 WL 454864, at *5 (6th Cir. Aug. 22, 1994) (per curiam) ("Logically this must be true or else § 1957 would serve only as an alternative charge for each 'specified unlawful activity' listed in the statute and not a separate criminal offense."); *Lovett*, 964 F.2d at 1042-43.

[47] Deason contends that he preserved this claim by means of objection, but our review of the record indicates that he failed to preserve the error.  Although his counsel objected to the trial court's questioning, his counsel subsequently proposed that the court take a "remedial measure, which would be to instruct the jury that you did not mean to communicate any partiality or belief as to the truth or nontruth of Deason's testimony."  The trial court agreed and so instructed the jury.  As such, Deason failed to preserve his objection to the district court's questioning.  *See United States v. Potts*, 644 F.3d 233, 236 (5th Cir. 2011) ("[The defendant] accepted the court's curative instruction without objection, thus failing to preserve error.").

[48] Fed. R. Evid. 614.

[49] *United States v. Saenz*, 134 F.3d 697, 701-02 (5th Cir. 1998).

court's questioning warrants reversal only when the "cumulative effect" is substantial and prejudices the defendant. [50]

Reviewing here for plain error, we conclude that, when analyzed in the context of the entire record, the cumulative effect of the trial court's questioning did not prejudice Deason.  We acknowledge that the court did engage in several salty exchanges with both sides during the course of the trial, but we perceive no reversible plain error.  The court's questioning concerning the timing of the $1,004,028.41 transfer to Deason's Wells Fargo account in relation to the text message he sent to Mrs. Secker's sister-in-law expressing doubt that the claim would ever be paid, as well as his intent in sending the text message, is relevant to the issues presented by his "mistake" defense. And, because Deason referred to several text messages and emails throughout the course of his testimony, it was not unreasonable for the trial court to seek clarification of Deason's somewhat circuitous testimony to aid the jury.  We conclude that the trial court did not plainly err.

### 5.    Count One (wire fraud): constructive amendment

Deason contends that Count One of his indictment was constructively amended, claiming that his conviction relied on evidence that did not support his transmission of the charged wire.  This claim returns to the "Iowa bank wire" theory he raised in his challenge to the sufficiency of the evidence related to Count One: "[I]t is impossible that the jury properly convicted [him] for the indicted act of causing the transmission of the Iowa bank wire listed in Count One." Deason failed to object to the alleged constructive amendment, so we review for plain error.[51]

---

[50] *Id.* at 702.

[51] *United States v. Bohuchot*, 625 F.3d 892, 897 (5th Cir. 2010).

No. 14-10461

"A constructive amendment occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged."[52]  Deason has failed to show any constructive amendment, let alone that the district court plainly erred.  As explained earlier, Count One does not charge an "Iowa bank wire," and, the jury charge essentially tracks the language of Count One.[53]  And finally, although not clearly articulated in Deason's brief, we reject any (assumed) challenge to the government's presentation of Rule 404(b) evidence as constructively amending the indictment.  The district court instructed the jurors that they could consider the Rule 404(b) evidence for limited purposes only.  We assume that a jury follows the trial court's instructions unless "there is an overwhelming probability that the jury [was] unable to [do so] and there is a strong probability that the effect is devastating."[54]  Deason does not contend that the jury did not follow its instructions.  We conclude that he has failed to show that Count One of the indictment was constructively amended.

### 6.    Ineffective assistance of counsel

Deason claims that his trial counsel was constitutionally deficient for failing to challenge Count One on the theory that it charged an Iowa bank wire and for failing to obtain admissible evidence establishing that Wells Fargo had "one wire room" as described in Deason's post-conviction affidavit.

---

[52] *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011) (citation and internal quotation marks omitted).

[53] *See, e.g., United States v. Seher*, 562 F.3d 1344, 1363 (11th Cir. 2009) (rejecting a defendant's constructive amendment claim when the "jury charge merely tracked the language of [the statute]").

[54] *United States v. Fortenberry*, 350 F. App'x 906, 910 (5th Cir. 2009) (quoting *United States v. Tomblin*, 46 F.3d 1369, 1390 (5th Cir. 1995)) (internal quotation mark omitted).

No. 14-10461

Generally, claims of ineffective assistance of counsel "cannot be resolved on direct appeal when [they have] not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations."[55] The Supreme Court has emphasized that a § 2255 habeas corpus motion is the preferred vehicle for raising claims of ineffective assistance of counsel: "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."[56]  Here, the record is not sufficiently developed concerning Deason's allegations of his trial counsel's deficient performance. We decline to review his ineffective-assistance claim – without prejudice, however, to his right to raise it in a collateral attack on his sentence.[57]

### 7.    Restitution order

The trial court ordered Deason to make full restitution to Transamerica in the amount of $99,491.75.  For the first time on appeal, he asserts that the court's restitution order violates his Sixth Amendment rights because it is based on judicial findings of fact.  We have reviewed this claim for plain error, and we conclude there is none.  Deason's theory is foreclosed by numerous decisions of this court holding that "judicial fact-finding supporting restitution orders does not violate the Sixth Amendment."[58]

### III.  Conclusion

Deason's conviction, sentence, and restitution order are AFFIRMED.

---

[55] *United States v. Cantwell,* 470 F.3d 1087, 1091 (5th Cir. 2006) (citation and internal quotation mark omitted).

[56] *Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

[57] *See United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014).

[58] *United States v. Ingles*, 445 F.3d 830, 839 (5th Cir. 2006) (footnote and internal quotation marks omitted); *see, e.g., United States v. Garza*, 429 F.3d 165, 170 (5th Cir. 2005) ("We agree with our sister Circuits, who have uniformly held that judicial fact-finding supporting restitution orders does not violate the Sixth Amendment.").